## Case No. 15,530.

UNITED STATES v. KIMBALL.

[Cited in U. S. v. Jarvis, Case No. 15,469. Nowhere reported; opinion not now accessible.]

## Case No. 15,531.

UNITED STATES v. KIMBALL.

[7 Law Rep. 32; 1 West. Law J. 399.]

District Court, D. Massachusetts. April 8, 1844.

OFFENCES AGAINST POSTAL LAWS—STEAMBOAT OR RAILROAD PASSENGER CARRYING LETTER.

1. If a passenger in a railroad car or steamboat carry a letter without the knowledge or consent of the owner of the car or steamboat, or any of his agents or servants, such owner is not liable to the penalty provided by the act of congress of 1825, § 19 [4 Stat. 107].

[1] [Reported by Hon. William Cranch, Chief Judge.]

2. The person who sends such letter by such passenger is not liable to the penalty provided in the twenty-fourth section of the said act, unless the owner of the car or steamboat is liable to the penalty provided by the nineteenth section.

3. The setting up of a post by railroad car or steamboat is not setting up a footpost, within the meaning of the statute of 1827, § 3 [4 Stat. 238].

[1] [This was a proceeding against the defendant for conveying or causing to be conveyed, over a post route, a letter for hire, to William Smith, Esq., from Boston to New York, on the 21st of February. The said William Smith, Esq., is a man of straw, made up for the purposes of the suit. The information against the respondent contains six counts, alleging the offence of carrying the letter to the said Smith in so many different ways.

[Franklin Dexter, U. S. Dist. Atty., in opening the case for the prosecution, read the several provisions from acts of congress which he considered applicable,—such as the third section of Act March 3, 1823, making the navigable waters within the United States post routes; second section of Act July 7, 1838 [5 Stat. 283], making every railroad a post route; section 19, c. 275, Act March 3, 1825 [3 Story's Laws, 1985 (4 Stat. 107, c. 64], prohibiting the carrying of letters out of the mail in any vehicle, and making the owner of the vehicle liable, on any post road, or road parallel thereto; and section twenty-fourth, same statute, extending the penalty to any person who shall procure the owner of such vehicle to carry a letter out of the mail, or aid him to do so, etc.; and also section 3, c. 218, Act 1827 [3 Story's Laws, 2066 (4 Stat. 238, c. 61)], prohibiting the establishing a private horse or foot post on any post road, or on any road parallel thereto. In reference to the act of 1825, Mr. Dexter suggested that it was not necessary that the owner of the vehicle should know that the letters were conveyed on it, to make him liable. The mere fact that a letter was so carried in his vehicle, with or without his privity, rendered him answerable. Having stated the law on his side. Mr. Dexter next put in the written admission of the respondent, that on the 21st of February he advertised in the newspapers to carry letters from Boston to New York, via Providence and Stonington, for six and a quarter cents each; that he kept an office in State street, Boston, for the purpose; that he sent the said letter to the said Smith, by a person who went to New York by the Stonington route, which he admitted to be a post route; that the said person was not paid for carrying the said letter; that he was not in any way connected with the railroads, or post office department; that this messenger was not informed this letter was paid for, unless the stamp of the respondent on said letter was information that the letter had been paid for.

[R. Fletcher and A. H. Fiske appeared for the respondent, and the latter gentleman opened the defence. The principal grounds relied on by him were as follows: That the prohibitory laws of congress on the subject are unconstitutional. In article 1, § 8, of the constitution, power is given to congress "to establish post offices and post roads" simply. It contains no prohibition, or clause giving to congress any exclusive regulation of post roads. By the articles of confederation, the continental congress had the "sole and exclusive right to establish post offices and post roads," and if the framers of the constitution had intended to continue this exclusive right in congress, they would have continued to use the language by which that right was established in the articles of confederation which they had before them. The carrying of letters by private enterprise did not impede, obstruct, or prevent the government from exercising the business of mail carrier, unless it did so by reducing the revenue of a department established for that purpose. But the constitution had not provided, that the department should be a source of revenue, or that it should support itself from its income for carrying letters, etc. It would be otherwise if the constitution had given to congress the power to "regulate" post offices, etc., as it has given it the power to "regulate" commerce, etc. Nor did the constitution make it imperative on congress to establish post offices and post roads. It only allowed the government to engage in the business in common with the states, or individuals. This is the substance of the constitutional argument.

[But, supposing the legislation of congress to be constitutional, Mr. Fiske contended that the facts admitted did not render the respondent liable. First, he had carried no letter himself; second, the owners of the railroads did not know that they were carrying any letters out of the mail, and in all penal cases the accused cannot be charged unless he does the penal act knowingly. Then, if the unconscious carrier cannot be guilty, the accessory to his carrying the letter cannot be reached. Finally, railroads are neither horse nor foot roads. They were means of communication which were not in existence when the law was passed, and that law cannot be enlarged so as to embrace what had never been dreamed of at the time of its enactment. It was plainly a casus omissus, and there was no remedy for the government but to pass new laws on the subject.] [2]

SPRAGUE, District Judge. This is an information to recover a penalty for an alleged violation of the post-office laws. The first, second and third counts charge, that on the

---

21st of February last a railroad car conveyed a letter on a post road, whereby the owners incurred a penalty of fifty dollars, and that the defendant procured and assisted in such conveyance, and thereby forfeited the sum of fifty dollars. It is admitted that the defendant on the day alleged sent a letter from Boston to New York by a person who went as a passenger in the car, and who received no compensation for conveying the letter, but that the defendant had received compensation therefor, and his stamp indicating that fact was upon the letter. The person who carried the letter had no connexion with the owners of the car or any of their agents, except as a passenger. The owners had previously advertised that they would not take passengers who should convey letters, contrary to law, and enjoined all persons in their employment not to receive the same. And neither the owners nor their agents had any knowledge of the conveyance of said letter. The nineteenth and twenty-fourth sections of the statute of 1825, c. 275 [3 Story's Laws, 1990, 1993 (4 Stat. 107, 109)], are relied on to sustain the prosecution.

Two propositions are laid down by the learned counsel for the government. (1) That under the nineteenth section it is not necessary that the act should be done with the knowledge or consent of the owner of the vehicle in order to subject him to the penalty. (2) That it is not necessary that the owner should be liable, in order to make any person subject to the penalty for procuring or assisting in the doing of the forbidden act. The first question is, would the owners of the car be liable to the penalty? The case is that of a passenger carrying a letter; and the proposition contended for necessarily goes to the extent, that if a passenger in a railroad car take a letter, either as an act of kindness or for hire, and carry the same concealed about his person or in his baggage, and without the consent or knowledge of the owner of the vehicle, such owner is subject to a penalty. He is a common carrier, and as such compellable to take passengers and their baggage. The law has made no provision requiring them to make known to the owner the fact of their taking letters, and if he might make it a condition that their persons and property should be searched, it would be so onerous and vexatious, and so inconsistent with the genius of our government and the feelings of the people, that it could not be practically enforced. Here was perfect innocence of intention, and not even a neglect of duty. The infliction of penalties under such circumstances would not be consonant to the general principles of jurisprudence or natural equity, and it is not to be supposed that the legislature intended to do so, unless such purpose be clearly expressed. I do not think it is so by this statute. The nineteenth section prohibits the doing of a certain act. This implies an actor. The vehicle is but the instrument. The

actor is the owner, and he is forbidden to convey letters. This, I think, means the conveying of letters as such, and not the conveyance of passengers who may have a letter concealed. This construction was adopted by the learned judge of the United States for the Southern district of New York, in the case of U. S. v. Adams [Case No. 14,421]. The second proposition contended for is, that the defendant may be liable under the twenty-fourth section, although the owners of the vehicle are not liable. That section provides that every person "who shall procure and advise, or assist, in the doing or perpetration of any of the acts or crimes by this act forbidden, shall be subject to the same penalties and punishments as the persons are subject to who shall actually do or perpetrate any of the said acts or crimes." This section, standing by itself, is wholly inoperative. It refers to and rests upon other provisions forbidding certain acts or crimes. In the case before us it must be coupled with the nineteenth section, and then two actors are contemplated, one who does the forbidden act, and another who procures or assists the doing thereof, and the latter is to be subject to the same penalty as the person is subject to, "who shall actually do the act," and to no other. Now if there be no person who has done the forbidden act—no one subject to a penalty therefor, how can another be subject to the same penalty for having procured or assisted the doing thereof?

The fourth and fifth counts are founded on the third section of the statute of 1827, which enacts that no person shall set up any foot or horse post for the conveyance of letters or packets upon any post road. The fifth count applies only to the distance between Court street, and the depot of the Providence Railroad, which does not appear to be a post road. The sixth count applies to the railroad, and over which, being a post road, it is admitted that the defendant did set up a post for the conveyance of letters. But was it a foot post as alleged in the information? The conveyance was by railroad cars—and that that is not a foot post according to the usual and ordinary acceptation of language is manifest. But it is urged, that it is within the mischief designed to be suppressed; and that there can be no doubt that the legislature intended to prohibit the setting up of any and all posts by individuals—and that this must be deemed to come within the description, and may more properly be called a foot than a horse post. It was also urged, in relation to the twenty-fourth section, that although there might be some difficulty in the particular phraseology used, yet that the general purpose and object of the statute is plain, and should be carried into effect. Here lies the stress and difficulty of the case. Since the passing of the post office laws new modes of conveyance have been established, and a condition of things arisen not then known or contemplated. And the question

is, whether new acts in contravention of the general spirit and policy of the laws, can be brought within any of its prohibitions, and subjected to a specific penalty. However willing the court might be to attain that end, it cannot strain or force the language used beyond its fair and usual meaning. We are not authorized, upon our notion of the general policy and purpose of the statute to inflict penalties, which the terms thereof according to their ordinary acceptation do not create. We cannot doubt that the mischief of regularly conveying letters by railroad is quite as great as carrying them by a man on foot or by horses. But is the court therefore authorized to say, that a person travelling in a railroad car is a man travelling on foot, or that a train of railroad cars moved by a steam engine may constitute a foot post?

There are several cases which have been decided in the courts of the United States, in which it would seem that the terms used in revenue and other acts, might more easily have been brought to create liabilities and forfeitures, in furtherance of the evident purposes and policy of the statute, than in the present case—and yet the court declined giving them such extended construction. Sugar dissolved in water was held not to be "sugar," so as to be subject to duties as such. U. S. v. 112 Casks Sugar, 8 Pet. [33 U. S.] 277. Loaf sugar which had been "crushed" and then imported, held not to be loaf sugar under the statute imposing a duty on that article. U. S. v. Breed [Case No. 14,638]. Worsted shawls with cotton borders, or worsted suspenders with cotton straps—held not to be manufactures of wool, or of which wool is a component part, although worsted is made of wool. Elliot v. Sturtevant, 10 Pet. [35 U. S.] 150. This also was under a revenue act. Driving living fat oxen across the lines to the enemy in time of war held not to be a transportation of them. U. S. v. Shelton, 2 Wheat. [15 U. S.] 120. In this case the court say, "that the mischief is the same affords no good reason for construing a penal law by equity, so as to extend it to cases not within the correct and ordinary meaning of the expressions of the law." In U. S. v. Breed [supra] it is said, that it defeats the general policy of the act is no ground for constraining construction. So also that "a wide door will be opened for the admission of frauds" upon the revenue is no reason for different practical constructions of the acts of congress. U. S. v. 200 Chests of Tea, 9 Wheat. [22 U. S.] 443, 444. A whaling voyage held not to be a foreign voyage, so as to require bond to be given to bring home the crew, although admitted to be within the mischief to be prevented and the policy to be promoted. Taber v. U. S. [Case No. 13,722] and it is there said: "The language (of a statute) is not to be employed to cover a case standing upon similar grounds, if the ordinary interpretation of the terms would not reach it." Again in Adams v. Bancroft [Id. 44] the court say: "Laws are never construed beyond the natural import of the language, and duties are never imposed upon the citizens upon doubtful interpretations; for every duty imposes a burden on the public at large, and is construed strictly, and must be made out in a clear and determinate manner from the language of the statute."

I shall instruct the jury: (1) That if a passenger in a railroad car or steamboat, passing over a post road or route, carry a letter without the knowledge or consent of the owner of the car or steamboat, or any of his agents or servants, such owner is not liable to the penalty provided by the nineteenth section of the act of 1825, c. 275 [3 Story's Laws, 1990 (4 Stat. 107, c. 64)]. (2) That such knowledge or assent are not to be presumed from the facts admitted in this case. (3) That the person who sends such letter by such passenger is not liable to the penalty provided by the twenty-fourth section of said act, unless the owner of the car or steamboat is liable to the penalty provided by the nineteenth section of said act. (4) That the setting up of a post by railroad car or steamboat is not setting up a foot post, within the meaning of the third section of the statute of 1827, c. 218. [3 Story's Laws, 2066 (4 Stat. 238, c. 61)].

Verdict for the defendant.